**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

THE GUTHRIE CLINIC,

          Plaintiff,

   v.

CONVERGENCE CT, INC.,

          Defendant.

No. 4:23-CV-01396

(Chief Judge Brann)

**MEMORANDUM OPINION**

**NOVEMBER 3, 2023**

## I.  BACKGROUND

On August 21, 2023, Defendant, Convergence CT, Inc. ("CCT" or "Convergence"), removed Plaintiff's five-count complaint from the Bradford County Court of Common Pleas.  Defendant then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), and a motion to strike pursuant to Federal Rule of Civil Procedure 12(f). These motions are now ripe for disposition; for the reasons that follow, they are denied in part and granted in part.

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be

granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[1] and *Ashcroft v. Iqbal*,[2] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[4]

### B.    Motion for a More Definite Statement Standard

Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement" when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response."[5] A "'motion for a more definitive statement is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail.'"[6] The "prevailing standard" in the

---

[1]    550 U.S. 544 (2007).

[2]    556 U.S. 662 (2009).

[3]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[4]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[5]    Fed. R. Civ. P. 12(e).

[6]    *Cote v. U.S. Silica Co.*, No. 4:18-CV-01140, 2018 WL 5718285, at *5 (M.D. Pa. Nov. 1, 2018) (quoting *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 521 (E.D. Pa. 2012)).

Third Circuit "is to grant a Rule 12(e) motion 'when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]'"[7]

### C.   Motion to Strike Standard

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter" under Federal Rule of Civil Procedure 12(f).[8] Motions to strike "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."[9] "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."[10]

### D.   Facts Alleged in the Complaint

The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.

---

[7]   *Id.* (quoting *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008)).

[8]   FED. R. CIV. P. 12(f).

[9]   *Keller v. Lackawana Cty.*, Civ. A. No. 3:15-2511, 2017 WL 3268154, at *2 (M.D. Pa. Aug. 1, 2017) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

[10]  *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quoting *Siler v. Cmty. Educ. Ctrs., Inc.*, No. 14-5019, 2014 U.S. Dist. LEXIS 140758, at *4 (E.D. Pa. Oct. 2, 2014)).

### 1.    The Agreement

On August 30, 2018, The Guthrie Clinic ("Guthrie" or "The Clinic") contracted with CCT to participate in its Global Healthcare Data Network ("GHDN").[11] Convergence "represented" the GHDN "as a patient data analytics tool that would include Guthrie's and other healthcare entities' patient data, which collectively, could be accessed by users."[12] Over the course of their relationship, it became clear that "the scope and capability of the GHDN" had been misrepresented.[13]

As required by the contract ("the Agreement"), Guthrie provided Defendant with access to its "[Patient] Source Data," defined as "clinical, administrative, operational and financial data[,] including any ancillary data that may be available through external sources."[14] Convergence could only use this information to create de-identified data for "research and analysis in the GHDN."[15] The Clinic had "the right to access" its own data and the right "to query" data from other GHDN participants.[16] However, CCT did not provide Guthrie with access to its own data or the GHDN "in a usable format."[17]

---

[11]   Doc. 1-1 (Compl.) ¶ 12.
[12]   *Id.* ¶ 23.
[13]   *Id.* ¶ 25.
[14]   *Id.* ¶ 26.
[15]   *Id.* ¶ 27.
[16]   *Id.* ¶ 30.
[17]   *Id.* ¶ 31.

### 2.    Payment Disputes

Plaintiff paid a $350,000 implementation fee "to cover the installation, initial setup activities and license to use the GHDN Staging System[,]" but this system "was never set up in any working form."[18] The Agreement allowed Guthrie to "completely recover" this fee through five annual payments of $70,000.[19] For the first year, this payment was "conditioned 'upon [] mutual agreement [of an] Implementation Work Plan."[20] Guthrie was also entitled to receive a portion of "the gross revenue received by CCT for each" GHDN client and an "Early Adopter Bonus."[21] The Clinic fulfilled its obligations, but Defendant failed to make any of these payments.[22]

### 3.    Use of the Patient Source Data

Plaintiff "granted CCT a non-exclusive, non-transferrable license to use [its Patient] Source Data 'solely'" to create de-identified data[23] for the term of the Agreement.[24] The Clinic avers that "CCT has used" its data "for purposes other than

---

[18]   *Id.* ¶¶ 31, 41. The Staging System is defined as a "standardized package of hardware, software, help desk support, and training." *Id.* ¶¶ 16, 39.

[19]   *Id.* ¶ 44.

[20]   *Id.* ¶ 45.

[21]   *Id.* ¶¶ 53, 55-56, 59-63, 87.

[22]   *Id.* ¶¶ 48-52.

[23]   De-identified data is created by removing personal identifiers such as names, addresses, and social security numbers from protected health information in accordance with Department of Health and Human Services guidelines. *See Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPPA) Privacy Rule*, DEP'T OF HEALTH AND HUMAN SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html (last accessed Nov. 2, 2023).

[24]   *Id.* ¶ 67.

those permitted by the Agreement" and has retained it "in violation of the Agreement and applicable federal and state laws."[25]

### 4.    Termination of the Agreement

Due to Defendant's "continuous failure to meet its material obligations[,]" Plaintiff provided "notice of non-renewal and termination of the Agreement" on September 23, 2022.[26] "Upon termination, CCT was required to destroy or eliminate access to all of Guthrie's Source Data" and to "return or destroy and certify the destruction of all of Guthrie's confidential information."[27] Convergence "refuses to provide proof that it has destroyed or eliminated access to" the data and "has not returned" this information.[28]

### 5.    Choice of Law Provision in the Agreement

The Agreement contains a choice of law provision that specifies that it "shall be governed by the law of the state in which [Guthrie] is located, without reference to its conflict of laws rules."[29] Guthrie's principal place of business is in Pennsylvania.[30]

---

[25]   *Id.* ¶¶ 74-75.
[26]   *Id.* ¶ 98.
[27]   *Id.* ¶¶ 100-101.
[28]   *Id.* ¶¶ 102-103.
[29]   Doc. 1-1 (Compl.), Ex. A (The Agreement) § 13(g).
[30]   Doc. 1-1 (Compl.) ¶ 1.

### E.    Analysis

Defendant requests the following: a more definite statement regarding Count I; dismissal of Counts II, III, IV, and V; and for certain averments in Counts I, IV, and V to be stricken.[31] If the Court declines to dismiss Counts II and III, CCT alternatively seeks more definite statements concerning these allegations.[32] The Court will analyze each of these requests in turn. Due to the choice of law provision in the Agreement, any state law claims will be analyzed using Pennsylvania law.

#### 1.    Count I – Breach of Contract

Guthrie alleges a breach of contract claim in Count I. Defendant seeks a more definite statement concerning this claim and to strike the allegations in Paragraphs 102, 103, 111, and 112 and the demand for attorneys' fees.

#### a.    Motion for a More Definite Statement

Convergence seeks more information concerning the timing of its alleged breaches because its rights and obligations are dependent upon whether Guthrie prematurely terminated the Agreement "due to a breach by CCT."[33] Without this information, Defendant concludes that it cannot respond.[34]

"In addressing motions for a more definite statement as to the timing of alleged acts underlying a claim in a complaint, courts in the Third Circuit have

---

[31]   Doc. 2 (Motion to Dismiss, Motion for a More Definite Statement, and Motion to Strike).
[32]   *Id.*
[33]   Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 5.
[34]   *Id.* at 6.

reached different outcomes depending on the circumstances of a given case."[35] Courts "have denied motions for a more definite statement in cases in which the timing of the alleged acts underlying a claim was the proper subject of discovery."[36] Here, this request concerns information more properly disclosed by discovery as the Complaint puts Defendant on notice regarding the nature of the alleged breaches and, in particular, identifies the date of final termination notice.[37]

### b.   Motion to Strike Paragraphs 102 and 103

In Paragraphs 102 and 103, Guthrie claims that CCT "refuses to provide proof" that it has destroyed, returned, or eliminated access to its Patient Source Data.[38] The Agreement requires either destruction or elimination of access to the data within thirty-days following termination and "verification" of these measures.[39] As currently alleged, Defendant contends that Plaintiff is attempting "to engineer new contractual obligations that never existed."[40] In response, Guthrie argues that "'proof' and 'verification' are one in the same" for pleading purposes.[41] *Merriam-Webster* defines "verify" as to "establish the truth, accuracy, or reality of" and "proof" as "the cogency of evidence that compels acceptance by the mind of a truth

---

[35]   *Kimberton Healthcare Consulting, Inc., v. Primary PhysicianCare, Inc.*, Civ. A. No. 11-4568, 2011 U.S. Dist. LEXIS 139980, at *26 (E.D. Pa. Dec. 6, 2011).
[36]   *Id.* (collecting cases).
[37]   Doc. 1-1 (Compl.) ¶ 99.
[38]   *Id.* ¶¶ 102-103.
[39]   Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 9 (citing Doc. 1-1 (Compl.), Ex. A (The Agreement) § 9(d)).
[40]   Doc. 7 (Corrected Reply Brief in Support of Motion to Dismiss) at 5.
[41]   Doc. 5 (Brief in Opposition to Motion to Dismiss) at 5.

or a fact."[42] The Court finds no material difference between these definitions for purposes of this motion. Because Paragraphs 102 and 103 are incorporated by reference into Count I, the motion to strike these allegations is denied as they may serve as the basis of the breach of contract action.[43]

### c.    Motion to Strike Paragraphs 111 and 112

Defendant also seeks to strike Paragraphs 111 and 112. In these paragraphs, Plaintiff alleges that CCT violated the implied covenant of good faith and fair dealing. In "Pennsylvania[,] the general duty of all parties to a contract includes" this covenant, but it will be "subsumed in a breach of contract claim."[44] The Clinic does not allege an independent cause of action based on this implied covenant. Instead, these averments identify "a breach of a duty imposed by the contract" to satisfy this element of a breach of contract claim.[45]

Although these paragraphs do not form an independent cause of action, CCT still asserts that they should be removed because "Guthrie has not alleged an express

---

[42] *Proof*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/proof (last visited Oct. 27, 2023); *Verify*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/verify (last visited Oct. 27, 2023).

[43] *See* Doc. 1-1 (Compl.) ¶ 113.

[44] *Frey v. Grumbine's RV*, No. 1:10-CV-1457, 2010 U.S. Dist. LEXIS 120659, at *33 (M.D. Pa. Nov. 15, 2010) (quoting *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992)); *Greenwald Caterers Inc. v. Lancaster Host, LLC*, 559 F. Supp. 3d 235, 260 (E.D. Pa. 2022) (quoting *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. Ct. 2008)).

[45] *Goldstein v. Elk Lighting, Inc.*, No. 3:12-CV-168, 2013 U.S. Dist. LEXIS 30569, at *27-28 (M.D. Pa. Mar. 4, 2013).

term that is missing" from the Agreement.[46] This covenant "cannot be used to override an express contractual term."[47] Further, parties cannot maintain a "claim for breach of implied covenants that is based on exactly the same acts which are said to be in breach of express covenants."[48] I agree that part of Paragraph 112 should be stricken as some of its language "is based on exactly the same acts which are said to be in breach of express covenants."[49] However, the remaining parts of Paragraph 112 are not based on any breach of an express contractual provision and instead arise out of this implied covenant. Consequently, Paragraph 112 will now read as follows: "CCT's complete refusal to cooperate with Guthrie is a breach of the implied covenant of good faith and fair dealing."[50]

### d.   Motion to Strike the Demand for Attorneys' Fees in Count I

"Pennsylvania law [generally] does not permit an award of attorneys' fees for a breach of contract claim."[51] Because "Plaintiff does not cite to an agreement between the parties, statutory authorization or any other exception that would allow

---

[46]   Doc. 7 (Corrected Reply Brief in Support of Motion to Dismiss) at 7-8.

[47]   *Greenwald*, 559 F. Supp. 3d at 260 (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 617-18 (3d Cir. 1995) and *USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 438 (3d Cir. 1993)).

[48]   *USX Corp.*, 988 F.2d at 349. *See also Gillis v. Respond Power, LLC*, Civ A. No. 14-3856, 2018 U.S. Dist. LEXIS 117769 (E.D. Pa. July 16, 2018).

[49]   *Id.*

[50]   Doc. 1-1 (Compl.) ¶ 112.

[51]   Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 7 (quoting *Collings v. State Farm Fire & Cas. Co.*, No. 2:22-CV-0057, 2022 WL 1291511, at *4 (E.D. Pa. Apr. 29, 2022)).

for recovery of attorneys' fees[,]" the request for attorneys' fees in Count I will be stricken.[52]

### 2.   Counts II and III – Plaintiff's Misappropriation of Trade Secret Claims

Plaintiff also asserts claims under the Pennsylvania Uniform Trade Secret Act ("PUTSA") and the Defend Trade Secrets Act ("DTSA") for the misappropriation of its trade secrets. Defendant seeks to dismiss these causes of action, and, in the alternative, requests a more definite statement of these allegations.

### a.   Motion to Dismiss the Trade Secret Claims

"To establish a misappropriation claim under the DTSA, a plaintiff must demonstrate: '(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce[;] and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret.'"[53] Since "[t]he DTSA and PUTSA are substantially similar and contain

---

[52] *Castillo v. Progressive Ins.*, No. 3:19-CV-1628, 2019 WL 5692771, at *4 (M.D. Pa. Nov. 4, 2019).

[53] *PetroChoice Holdings, Inc. v. Orobono*, No. 2:19-CV-06152, 2022 U.S. Dist. LEXIS 7380, at *6 (E.D. Pa. Jan. 14, 2022) (quoting *Oakwood Laby's LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021)).

'almost identical' definitions of the term 'trade secret[,]'" the "Court will apply the same analysis to [Guthrie's] claims under both laws."[54]

### 1.      The Patient Source Data is a Trade Secret

It must be determined whether Guthrie has properly identified a trade secret that warrants protection. A "trade secret is information that: '(a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use.'"[55] The Clinic naturally contends that its Patient Source Data is a trade secret. This data "includes Guthrie's confidential patient lists, patient diagnosis and treatment information, and financial data."[56] CCT asserts that because Guthrie is required by law to maintain this information and is "prohibit[ed] by [the Health Insurance Portability and Accountability Act's ("HIPAA")] 'privacy rules from using or disclosing private health information," this data "cannot derive independent economic value from not being generally known."[57]

---

[54]   *IQVIA, Inc. v. Breskin*, Civ. A. No. 22-2610, 2023 U.S. Dist. LEXIS 47174, at *10 (E.D. Pa. Mar. 20, 2023) (quoting *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 381 n. 19 (3d Cir. 2021)).

[55]   *PetroChoice*, 2022 U.S. Dist. LEXIS 7380, at *7 (quoting *Teva Pharms. USA, Inc., Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018)).

[56]   Doc. 1-1 (Compl.) ¶ 114.

[57]   Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 13 (citing 49 PA. CODE §§ 16.95(a)-(d) (2023) and *Rodriguez v. City of New Brunswick*, No. 12-4722, 2017 WL 5598217, at *6 (D.N.J. Nov. 21, 2017)).

First, whether Guthrie is an "owner" of the Patient Source Data must be considered. A number of courts have concluded that patient lists qualify as trade secrets.[58] Although "[p]atient information protected by HIPPA belongs to the patient," the "commercial value of a compiled list of customers, not the identities of individual customers, [] constitutes [the] protectable trade secret."[59] Guthrie therefore owns the Patient Source Data to the extent it can derive commercial value from this information.

Next, Guthrie must demonstrate that it "has taken reasonable means to keep [this information] secret" and that it "is not readily ascertainable by proper means."[60] The Clinic alleges that it "makes reasonable efforts to safeguard" its trade secrets."[61] Plaintiff distributes this information "on a need-to-know basis" and requires its "employees to commit to maintaining the confidentiality of" this information.[62] These averments satisfy these elements at this stage of the proceeding.

Third, the Clinic must plausibly allege that this information "derives independent economic value" from remaining secret.[63] Several factors support this

---

[58] *See e.g.*, *Shumway v. Wright*, 4:19-CV-00058, 2019 U.S. Dist. LEXIS 148882 (D. Utah Aug. 26, 2019) and *Pollack v. Skinsmart Dermatology and Aesthetic Ctr.*, 68 Pa. D. & C. 4th 417 (C.C.P. Phila. Cnty. Oct. 5, 2004).

[59] *Welter v. Med. Prof'l Mut. Ins. Co.*, 22-CV-11047, 2023 U.S. Dist. LEXIS 70304, at *40-41 (D. Mass. Feb. 23, 2023).

[60] *PetroChoice*, 2022 U.S. Dist. LEXIS 7380, at *7 (quoting *Teva Pharms.*, 291 F. Supp. 3d at 675).

[61] Doc. 1-1 (Compl.) ¶ 116.

[62] *Id.*

[63] *PetroChoice*, 2022 U.S. Dist. LEXIS 7380, at *7 (quoting *Teva Pharms.*, 291 F. Supp. 3d at 675).

conclusion. The Complaint raises an inference that having access to de-identified Patient Source Data provides value.[64] As referenced above, several courts have also concluded that patient lists are trade secrets.[65] When reaching this conclusion, these courts noted the "tremendous advantage" patient lists can afford medical providers.[66] The Patient Source Data is also distinguishable from non-trade secret information such as user names and passwords that "merely" protect "presumably valuable information."[67] The data itself is the "presumably valuable information" as it can be de-identified and used for a variety of purposes.[68]

Finally, the information would provide economic value to individuals or entities "who cannot readily access it."[69] Although much of the Patient Source Data is protected by HIPPA, significant value can be realized once it is de-identified because "[t]here are no restrictions on the use or disclosure of de-identified health information."[70] This allows it to be "used and disclosed for research, health care

---

[64]  Doc. 1-1 (Compl.) ¶¶ 11, 23, 31-32.

[65]  *See e.g.*, *Shumway*, 2019 U.S. Dist. LEXIS 148882, at *11-12 and *Pollack*, 68 Pa. D. & C. 4th at 417.

[66]  *Shumway*, 2019 U.S. Dist. LEXIS 148882, at *12. *See also Crown Coal & Coke Co. v. Compass Point Res., LLC*, Civ. A. No. 07-1208, 2009 U.S. Dist. LEXIS 26556, at *20-21 (W.D. Pa. Mar. 31, 2009) (acknowledging the value in-depth customer information can provide to a company).

[67]  *Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 176 (W.D. Pa. 2020) (quoting *N. Star Media, LLC v. Winogradsky-Sobel*, CV 11-466, 2011 U.S. Dist. LEXIS 165314, at *11 (C.D. Cal. May 23, 2011)).

[68]  *Id.*

[69]  *PetroChoice*, 2022 U.S. Dist. LEXIS 7380, at *7 (quoting *Teva Pharms.*, 291 F. Supp. 3d at 675).

[70]  *Summary of the HIPPA Privacy Rule*, U.S. DEPT. OF HEALTH AND HUMAN SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last visited Oct. 27, 2023).

operations, and public health purposes."[71] In fact, the whole existence of the GHDN reinforces the value of the de-identified Patient Source Data to other parties. Based on the above analysis, the Court concludes that Plaintiff has plausibly alleged that its Patient Source Data is a protectable trade secret.

### 2.    Misappropriation of the Trade Secret

I must now consider whether Defendant misappropriated this data. The Clinic avers that Convergence improperly induced it to sign the Agreement by misrepresenting its "capabilities, the capability and reach of the GHDN, and [its] purposes for both the Agreement and the GHDN."[72] Plaintiff further contends that Defendant "utilized Guthrie's trade secrets to develop its commercial patient and healthcare analytics software for [solely its own] competitive benefit."[73]

Misappropriation includes the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret."[74] "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through

---

[71]  *Id.*
[72]  Doc. 1-1 (Compl.) ¶ 123.
[73]  Doc. 1-1 (Compl.) ¶¶ 124-125.
[74]  12 PA. CON. STAT. § 5302 (2023); Defend Trade Secrets Act, 18 U.S.C. § 1839(5) (2016).

electronic or other means."[75] The "improper means" at issue here are the alleged misrepresentations of Defendant's capabilities and the status of the GHDN that induced Guthrie to sign the Agreement.[76] Through the Agreement, CCT then "acquired" access to the Patient Source Data and used it to develop its own software.[77] Misrepresentation under similar circumstances has been noted as a way to properly allege misappropriation.[78] In line with these decisions, this Court concludes that plaintiff has plausibly alleged misrepresentation to establish "improper means." Because these "improper means" led to both the acquisition and use of the Patient Source Data, Plaintiff has sufficiently pled misappropriation of its trade secrets at the motion to dismiss stage.

### 3. Interstate or Foreign Commerce Connection for the DTSA Claim

The DTSA also requires the trade secret to be "related to a product or service used in, or intended for use in, interstate or foreign commerce."[79] This requirement

---

[75]  18 U.S.C. § 1839 (6)(A) (2016).

[76]  Doc. 1-1 (Compl.) ¶¶ 123-125.

[77]  *Id.*

[78]  *See e.g.*, *Principia Partners LLC v. Swap Fin. Grp.*, *LLC*, 18 Civ. 7998, 2019 U.S. Dist. LEXIS 165557, at *9 (S.D.N.Y. Sept. 26, 2019) (noting that the plaintiff did not "allege that [the] defendant [had] induced [the] plaintiff to enter into the Contract in order to misappropriate use of" the trade secret when dismissing the DTSA claim); *Hybir, Inc. v. Global*, 1:22-CV-00472, 2023 U.S. Dist. LEXIS 15778, at *17-19 (W.D. Tex. Jan. 31, 2023) (plausibly alleging a trade secret claim when the plaintiff was "induced to provide [trade secret information] under the guise of the parties' ongoing relationship"); and *M S Int'l v. Patel*, 18-00152, 2018 U.S. Dist. LEXIS 245047, at *19-20 (C.D. Cal. Nov. 26, 2018) (alleging that the plaintiff would not have granted access to their trade secret information if the defendants had not "misrepresented that their loyalty lay solely with" the plaintiff when they were actually "pursuing their own interests").

[79]  18 U.S.C. § 1836(b)(1) (2016).

has been met as the alleged misappropriation occurred through the use of a "multi-national healthcare data network" and Patient Source Data that is compiled from Plaintiff's multi-state operations.[80]

### 4.   Defendant's Counterarguments

Next, the Court will consider Convergence's two counterarguments: that the parties are not competitors and that the Patient Source Data was only labeled as confidential in the Agreement.[81] Turning first to the competition argument, the statutes do not limit trade secret claims to instances of direct competition.[82] Instead whether the alleged misappropriating party has a "use for the confidential information" is critical.[83] The de-identified data provides direct value, as alleged by Guthrie, to Defendant.[84] Second, labeling certain information as "trade secret" and other information as "confidential" under the Agreement does not alter the statutory analysis conducted by the Court.[85] Therefore, the Court denies Convergence's request to dismiss the trade secret claims in Counts II and III.

---

[80]   Doc. 1-1 (Compl.) ¶¶ 7, 11.

[81]   *See* Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 14.

[82]   *See* 18 U.S.C. § 1836 (2016); 12 PA. CON. STAT. § 5302 (2023).

[83]   *Pittsburgh Logistics Sys. v. LaserShip, Inc.*, 2:18-CV-1382, 2019 U.S. Dist. LEXIS 98470, at *34 (W.D. Pa. June 12, 2019).

[84]   *See* Doc. 1-1 (Compl.) ¶ 125.

[85]   Even if the Court were to conclude that this distinction would be dispositive, it is not clear that the Agreement supports CCT's contention. CCT asserts that the Agreement identifies its "software and related information as trade secrets." Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 14. Instead, it simply asserts that the relevant software is "protected by copyright, trademark, trade secrecy, and/or other intellectual property laws." Doc 1-1 (Compl.), Ex. A. (The Agreement) § 4(d).

### b.     Motion for More Definite Statement

Defendant contends that a more definite statement is needed because the restrictions on using the Patient Source Data depend on whether "the Agreement was in effect and how and when the Agreement was terminated."[86] This argument misreads the Complaint; Guthrie alleges that misappropriation occurred once "CCT obtained Guthrie's trade secrets through improper means by inducing Guthrie to enter into the Agreement based on CCT's misrepresentations."[87] Whether the Agreement was in effect is not required to answer this allegation. The Defendant also asserts that a more definite statement is required to determine if any of these claims are time-barred.[88] "Although [CCT] may not be able to determine with certainty whether a limitations defense is viable, the allegations" are "sufficient to allow [Convergence] to raise such a  defense" given that a "general time frame within which the alleged acts took place" has been provided.[89] The motion for a more definite statement is therefore denied.

### 3.     Count IV – Guthrie's Unjust Enrichment Claim

CCT additionally requests dismissal of the unjust enrichment claim. Unjust enrichment is "an equitable doctrine" where "the law implies a contract, which

---

[86]  Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 15.
[87]  *Id.* ¶ 123.
[88]  Doc. 7 (Reply Brief in Support of Motion to Dismiss) at 13.
[89]  *Kimberton Healthcare Consulting, Inc.,* 2011 U.S. Dist. LEXIS 139980, at *29.

requires the defendant to pay to the plaintiff the value of the benefit conferred."[90] "A plaintiff cannot recover for a breach of contract and unjust enrichment under the same set of facts."[91] The allegations that CCT improperly retained and used the Patient Source Data, despite Plaintiff's attempt to assert otherwise, are based on violations of duties imposed by the Agreement.

Guthrie also cannot plead a breach of contract and unjust enrichment claim in the alternative as the validity of the underlying contract has not been questioned.[92] Dismissing this claim does not deny the Clinic any remedy should the Court eventually dismiss the trade secret claims.[93] Such an argument does not acknowledge the contractual nature of this aspect of the dispute. Therefore, Count IV of the Complaint is dismissed with prejudice.

### 4.   Count V – Plaintiff's Conversion Claim

In moving to dismiss Count V, Convergence argues that this conversion claim is barred by the gist of the action doctrine and Guthrie's failure to allege complete dispossession of the relevant information.[94] "Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's

---

[90]   *Ashley Dev. Corp. v. BT Stone Hill, LP*, No. 2018-C-3121, 2023 Pa. Dist. & Cnty. Dec. LEXIS 32 (Mar. 8, 2023).

[91]   *Id.*

[92]   *See Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (citations omitted).

[93]   *See* Doc. 5 (Brief in Opposition to Motion to Dismiss) at 13.

[94]   Doc. 4 (Memorandum of Law in Support of Motion to Dismiss) at 17-18.

consent and without lawful justification."[95]  The gist of the action doctrine precludes "a plaintiff from re-casting ordinary breach of contract claims into tort claims."[96] "In determining whether the gist of the action is based on a contract or tort, we look to the nature of the duty breached as alleged in the complaint."[97] "If the claim arises directly from a breach of a contractual duty created by the parties, it is a contract action[,]" but if it "arises from the violation of a broader social duty imposed by society and not by the parties to the action, it is a tort action."[98]

Guthrie avers that "CCT has wrongfully retained" and used its trade secret and confidential information "for purposes outside the scope of the Agreement."[99] These allegations are based on duties imposed by the Agreement. Plaintiff has also not alleged that these actions violate a "broader social duty."[100] Like its unjust enrichment claim, dismissing this cause of action does not deny the Clinic any remedy due to the contractual nature of this aspect of the dispute. Because the Court concludes that this claim must be dismissed, there is no need to reach Defendant's complete dispossession argument or to address the request to strike the demand for attorneys' fees. Count V is therefore dismissed but leave to amend will be provided.

---

[95]   *Turuvekere v. ContinuServe, LLC*, Civ. A. No. 12-5158, 2012 WL 5961957, at *3 (E.D. Pa. Nov. 28, 2012) (quoting *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987)).

[96]   *Id.* at *2 (quoting *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003)).

[97]   *Smith v. Univ. of Pa.*, 534 F. Supp. 3d 463, 477 (E.D. Pa. 2021).

[98]   *Id*.

[99]   Doc. 1-1 (Compl.) ¶¶ 155-156.

[100]   *See McKesson Corp. v. Campbell*, 134 A.3d 502 (Pa. Super. Ct. 2015) (citing *Pittsburgh Const. Co. v. Griffith*, 834 A.2d, 572, 584 (Pa. Super. Ct. 2003)).

### III.    CONCLUSION

Defendant[s]' motion to dismiss pursuant to Rule 12(b)(6), motion for a more definite statement pursuant to Rule 12(e), and motion to strike pursuant to Rule 12(f) are granted in part and denied in part, with Plaintiff granted leave to amend Count V of the Complaint.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge